## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

RONNIE DUNCAN,

      Plaintiff,

  vs.

DETROIT TELEVISION STATION
WKBD INC., CBS BROADCASTING
INC. & PARAMOUNT GLOBAL,

      Defendants.

Case No. 2:24-cv-13482

Judge: Susan K. DeClercq

Mag. Judge: David R. Grand

Ertis Tereziu (P84911)
etereziu@forthepeople.com
MORGAN & MORGAN, P.A.
2000 Town Center, Suite 1900
Southfield, Michigan 48075
Telephone:  313.739.1953

Marc Edelman, FL Bar No. 0096342
medelman@forthepeople.com
MORGAN & MORGAN, P.A.
201 N. Franklin Street, Suite 700
Tampa, Florida 33602
Telephone:  813.577.4722

Attorneys for Plaintiff

Gary C. Ankers (P41599)
gankers@littler.com
LITTLER MENDELSON, P.C.
500 Woodward Ave., Suite 2600
Detroit, Michigan 48226
Telephone:  313.446.6400
Facsimile:  313.446.6405

Attorneys for Defendants DETROIT
TELEVISION STATION WKBD INC.,
CBS BROADCASTING INC. &
PARAMOUNT GLOBAL

## DEFENDANTS' ANSWER TO COMPLAINT
## AND AFFIRMATIVE AND OTHER DEFENSES

Defendants Detroit Television Station WKBD Inc. ("WKBD"), CBS

Broadcasting Inc. ("CBS") and Paramount Global ("Paramount") (collectively

"Defendants"), by and through their attorneys, Littler Mendelson, P.C., and for their

answer and affirmative and other defenses to Plaintiff Ronnie Duncan's Complaint, states as follows:

## JURISDICTION AND VENUE

1.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331, as this action involves federal questions regarding violations of Plaintiff's rights under Title VII and Section 1981. A copy of Plaintiff's Right to Sue Letter is attached as Exhibit **("Ex.") 1 – EEOC Right to Sue Letter**.

**ANSWER: Defendants admit that this Court has jurisdiction over Plaintiff's claims but deny they have any liability to Plaintiff on his claims.**

2.     This Court also has diversity jurisdiction as the parties are citizens of different states and the amount in controversy exceeds $75,000.00.

**ANSWER: Defendants admit that this Court has jurisdiction over Plaintiff's claims but deny they have any liability to Plaintiff on his claims.**

3.     This Court has supplemental jurisdiction over Plaintiff's ELCRA, Breach of Contract, and Promissory Estoppel claims pursuant to 28 U.S.C. § 1367, as these claims are so related to Plaintiff's federal claims that they form part of the same case or controversy.

**ANSWER: Defendants admit that this Court has jurisdiction over Plaintiff's claims but deny they have any liability to Plaintiff on his claims.**

4.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because CBS Detroit regularly conducts business within this District and employed Plaintiff

4909-2005-1471

therein, and because Plaintiff resides in this District where the substantial part of the events giving rise to these claims occurred.

**ANSWER: Defendants admit that venue is proper in this District but deny they have any liability to Plaintiff on his claims.  In further response to Paragraph 4, "CBS Detroit" is not a true legal entity and did not employ Plaintiff.**

## PARTIES

5.    Mr. Duncan is a former employee of CBS Detroit residing in this District at all relevant times.

**ANSWER: Defendants admit that Plaintiff is a former employee and their personnel records reflect that he resided in this District.**

6.    Upon information and belief, all Defendants were joint employers of Plaintiff:

> i)  CBS Detroit is a foreign corporation that produces local daily news programming from its 26905 W. Eleven Mile Road, Southfield, MI 48033 facility. CBS Detroit also carries programming created by CBS Stations.
>
> ii) CBS Stations is a national entity and the news division of Paramount Global. CBS Stations is a foreign corporation with its resident agent located in Lansing, Michigan. CBS Stations owns and operates CBS Detroit. CBS Stations provides resources and services, such as

4909-2005-1471

financing and recruiting, for its local news stations, including CBS Detroit. CBS Stations maintains substantial control over CBS Detroit and oversees its overall direction.

iii) Paramount is a national media company that serves customers worldwide by producing news and entertainment content through its network of studios and talent. Paramount is a foreign corporation with its Principal Executive Office located at 1515 Broadway, New York, NY, 10036. Paramount is CBS Stations' parent company and maintains ultimate authority over personnel decisions and operational oversight at both CBS Stations and CBS Detroit. Like his peers at CBS Detroit, Plaintiff had a "@paramount.com" email address.

**ANSWER: Denied as alleged. In further response to Paragraph 6, "CBS Detroit" and "CBS Stations" are not true legal entities and did not employ Plaintiff. In further response to Paragraph 6, Plaintiff was employed by "CBS Broadcasting, Inc."**

## STATEMENT OF FACTS

7.     Mr. Duncan is an African American, proud of his lifelong civil rights advocacy.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint and leaves Plaintiff to his proofs.   In further response to Paragraph 7, upon information and belief, Defendants admit that Plaintiff is an African-American.**

8.     Mr. Duncan's storied broadcasting career includes multiple Emmy nominations, writing and producing an award winning sports documentary, winning the Broadcasters Association's "Best Sports Anchor" award, the Associated Press's "Best Sports Coverage" award, and hosting an exclusive interview with Governor Rick Snyder regarding the Flint Water Crisis.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint and leaves Plaintiff to his proofs.**

9.     In 2022, Laurie Orlando ("Ms. Orlando"), Senior Vice President of Talent Strategy for CBS Stations, interviewed Mr. Duncan for a local news position in Detroit, identifying Boston as another potential market for his consideration.

**ANSWER:  Defendants admit that Plaintiff interviewed for a local news position in 2022.**

10.     Ms. Orlando represented that Mr. Duncan was an excellent candidate for either local market CBS Stations was committed to having its local newsroom

talent "look" like the targeted local market = *i.e.*, greater on-air African American representation in African American markets.

**ANSWER: Denied in the manner and form stated.**

11.    CBS Stations objectives were aligned with Mr. Duncan's personal beliefs, and he accepted an oral offer of employment at CBS Detroit.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 11 of the Complaint and leaves Plaintiff to his proofs.**

**CBS Detroit Stalls Mr. Duncan's Formal Offer of Employment.**

12.    The offer remained pending for an extended period of time, purportedly awaiting final approval from CBS Detroit. Frustrated with the delay and unwilling to forego other opportunities. Duncan contacted Ms. Orlando and informed her he was withdrawing his name from consideration.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 12 of the Complaint and leaves Plaintiff to his proofs.**

13.    Ms. Orlando asked him to reconsider, assuring him an offer would be extended the next business day.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 13 of the Complaint and leaves Plaintiff to his proofs.**

4909-2005-1471

14.     Ms. Orlando represented CBS Detroit's management's delay was unrelated to his skills or qualifications. Rather, his versatility provided them flexibility with determining his ultimate role with the station.

**ANSWER: Defendants admit that management's delay was unrelated to Plaintiff's skills or qualifications.  In further response to Paragraph 14, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in Paragraph 14 of the Complaint and leaves Plaintiff to his proofs.**

15.     During their discussion, Ms. Orlando and Mr. Duncan addressed the systemic barriers facing African American talent in television news, expressing mutual commitment to transform the industry from exclusion to meaningful diversity and inclusion.

**ANSWER: Denied in the manner and form stated.**

16.     After having this conversation, Mr. Duncan agreed not to withdraw his name from consideration.

**ANSWER: Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 16 of the Complaint and leaves Plaintiff to his proofs.**

17.     On July 28, 2022, Mr. Duncan and CBS Detroit entered into a three-year agreement (the "Contract") for Mr. Duncan to become CBS News Detroit's Sports Anchor and Reporter. **Ex. 2 – Employment Agreement**.

4909-2005-1471

**ANSWER:  Defendants admit that Plaintiff and Defendants entered into a contract of employment.**

18.    The Contract's terms limit the reasons Defendants may terminate Mr. Duncan. ***See id***., Sections 7, 13.

**ANSWER: Defendants admit that Plaintiff's employment contract contained terms addressing termination.**

**<u>CBS Detroit's Discriminatory Practices Towards African Americans.</u>**

19.    Initially, CBS Stations' stated goals of inclusion and diversity aligned with CBS Detroit management's public messaging promoting CBS Detroit.

**ANSWER:  Denied in the manner and form stated.**

20.    In an interview to NewscastStudio, a trade publication, CBS Detroit News Director Paul Pytlowany ("Mr. Pytlowany") remarked, "[i]f we look like everyone else, we've failed . . . . It's really neighborhoods to newsrooms instead of newsrooms to neighborhoods."[1]

**ANSWER:  Denied in the manner and form stated.**

21.    In a promotional video, CBS Detroit marketed itself as being less news about deadly crime in Detroit and more about positive stories that matter to its market viewers.[2]

---

[1] https://www.newscaststudio.com/2023/01/23/cbs-news-detroit-launch-newscasts/ (last accessed December 29, 2024).

[2] *See id*. embedded YouTube video (last accessed December 29, 2024).

4909-2005-1471

**ANSWER:  Denied in the manner and form stated.**

22.    While on the outside, CBS Detroit promoted a commitment to diversity, behind the scenes, Mr. Duncan observed a pervasive pattern of race-based differential treatment.

**ANSWER:  Denied for the reason that it is untrue.**

23.    Mr. Duncan observed that management delayed extending offers to qualified African Americans applicants to discourage African Americans' continued interest in positions. Instead, less qualified Caucasian applicants were hired.

**ANSWER:  Denied for the reason that it is untrue.**

24.    Mr. Duncan watched as CBS Detroit hired Africans Americans for janitorial positions but never hired a single African American for a Sales position.

**ANSWER:  Denied for the reason that it is untrue.**

25.    Similarly, Mr. Duncan observed members of management at CBS Detroit promulgate race-based stereotypes and engage in racially offensive conduct. Specifically, a member of management once compared a gorilla's lips to an African American employee's lips at CBS Detroit.

**ANSWER:  Denied in the manner and form stated.**

26.    With respect to the content aired, Mr. Duncan watched as CBS Detroit's management repeatedly rejected "positive" stories regarding African Americans but promoted positive stories involving Caucasians.

**ANSWER:  Denied for the reason that it is untrue.**

4909-2005-1471

27.    Because of his decades of experience and stature within the broadcasting community, CBS Detroit often referred to Mr. Duncan as "our newsroom leader,"[3] and employees often came to him to vent, seek guidance, or ask for assistance.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 27 of the Complaint and leaves Plaintiff to his proofs.**

28.    For example, one African American employee approached Mr. Duncan seeking guidance because CBS Detroit paid him less than it did his less qualified Caucasian co-worker, even after the employee raised the issue to CBS Detroit's President and General Manager, Brian Watson ("Mr. Watson").

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 28 and leaves Plaintiff to his proofs.**

**Mr. Duncan Advocates About the Racism at CBS Detroit.**

29.    Around the time of his one-year anniversary, Mr. Duncan expressed concern regarding the station's lack of diversity to Mr. Pytlowany, Newsroom Director. Thereafter, Mr. Pytlowany distanced himself from Mr. Duncan.

---

[3] Even CBS Detroit's management used this term to proudly describe Mr. Duncan when CBS Stations executives visited.

4909-2005-1471

**ANSWER:  Denied in the manner and form stated.**

30.     Shortly thereafter, Mr. Duncan expressed his concerns to Ms. Orlando, that CBS Detroit's hiring practices were discriminatory against African Americans.

**ANSWER:  Denied in the manner and form stated.  In further response to Paragraph 30, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding alleged discrimination in the workplace.**

31.     Ms. Orlando instructed Mr. Duncan to memorialize his complaints in an email to her and top brass at CBS Stations. Mr. Duncan expressed fear of retaliation, but Ms. Orland assured him Defendants would not retaliate against him.

**ANSWER:  Denied in the manner and form stated.  In further response to Paragraph 31, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding alleged discrimination in the workplace.**

32.     As a result of Ms. Orlando's assurance, Mr. Duncan memorialized his complaints in an August 20, 2023, email to CBS Stations' executives, stating, in relevant parts:

> As an African-American, I find it disappointing to work in a Newsroom where no-one of color sits at the table that can make comments or contribute toward the editorial direction of our daily content.

> What is also equally disheartening is the fact that I work in a city that is more than 75 percent African – Americans; and no one of color is represented in our Sales staff.

> This appears odd to me when I consider a CBS philosophy often echoed by many corporate leaders of this company that speak on values of diversity.

11

It appears that several times many candidates for hire have even given up waiting to hear back from local management or [sic] pass over in favor of someone with little or no experience.

I've never worked in a newsroom in over 40 years where my scripts or that of my colleagues are not approved.

**ANSWER: Denied in the manner and form stated.  In further response to Paragraph 32, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding alleged discrimination in the workplace.**

**ANSWER:**

33.     Within days of his e-mailed complaint, management at CBS Detroit began alienating Mr. Duncan. During this same timeframe, Ms. Orlando advised Mr. Duncan that Mr. Watson would be contacting him regarding his concerns. Shortly thereafter, Mr. Watson and Mr. Duncan had a brief initial meeting regarding the general nature of Mr. Duncan's concerns. The meeting was short and professional, and the two men agreed to meet again to discuss Mr. Duncan's complaints in greater depth.

**ANSWER: Denied in the manner and form stated.  In further response to Paragraph 33, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding discrimination in the workplace.**

34.     During the second meeting with Mr. Watson, which occurred in September 2023, Mr. Duncan provided specific examples of what he believed to be discriminatory practices, and expressed concern that CBS Detroit was discriminating

against African Americans in hiring and on-air opportunities. Mr. Watson became angry and defensive, and appeared to take personal offense to Mr. Duncan's allegations.

**ANSWER: Denied in the manner and form stated.  In further response to Paragraph 34, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding discrimination in the workplace.**

35.    As Mr. Duncan originally feared, having witnessed Mr. Watson's reaction to his complaints, Mr. Duncan surmised there was a very strong likelihood of retaliation. Mr. Duncan immediately contacted Ms. Orlando to apprise her of the meeting with Mr. Watson and his concern that he would be targeted for retaliation.

**ANSWER: Denied in the manner and form stated.  In further response to Paragraph 35, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding discrimination in the workplace.**

**Mr. Duncan is Terminated.**

36.    Within months, Mr. Duncan's fears were realized. In October 2023, a Human Resources representative from Paramount advised Mr. Duncan he was under investigation for sexual harassment.

**ANSWER: Denied as alleged.  In further response to Paragraph 36, Plaintiff did become the subject of an internal investigation concerning allegations of improper workplace behavior and sexual harassment.**

13

37.     Certain of his innocence, Mr. Duncan fully cooperated with the HR investigation because the allegations against him were nothing more than efforts to weaponize sexual harassment protocols in retaliation for his opposing race discrimination at CBS Detroit.

**ANSWER: Denied for the reason that it is untrue.**

38.     The allegations of harassment were bogus, and Defendants discriminatorily applied policies and procedures to reach a contrived outcome – termination.

**ANSWER: Denied for the reason that it is untrue.**

39.     On December 14, 2023, Defendants terminated Mr. Duncan's employment.

**ANSWER: Defendants admit that Plaintiff was terminated from his employment.**

40.     Mr. Duncan was replaced by an individual outside his protected status and was provided with better terms and conditions of employment than those provided to Mr. Duncan.

**ANSWER: Denied for the reason that it is untrue.**

### COUNT I – RETALIATION IN VIOLATION OF TITLE VII

41.     Plaintiff re-alleges Paragraphs 7 to 40 as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-40 of Plaintiff's Complaint as if fully set forth herein.**

14

42.     Plaintiff engaged in protected activity by opposing Defendants'
discriminatory conduct, which he believed violated Title VII.

**ANSWER: Denied for the reason that it is untrue.**

43.     Plaintiff's protected activity was known to Defendants.

**ANSWER: Denied for the reason that it is untrue.**

44.     Defendants retaliated against Plaintiff for engaging in protected activity
by changing the terms and conditions of his employment and orchestrating a sexual
harassment investigation to terminate his employment.

**ANSWER: Denied for the reason that it is untrue.**

45.     Defendants used the bogus sexual harassment investigation as "cover"
for retaliation in violation of Title VII. The investigation and outcome were pretext
for illegal retaliation.

**ANSWER: Denied for the reason that it is untrue.**

46.     As a direct result of the wrongful termination, Plaintiff has suffered
damages including, but not limited to, lost past and future income and benefits, and
emotional distress.

**ANSWER: Denied for the reason that it is untrue.**

47.     Plaintiff seeks punitive damages as well as attorneys' fees and costs to
the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further deny that Plaintiff is entitled to any damages.**

## <u>COUNT II – RETALIATION IN VIOLATION OF § 1981</u>

48.    Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-47 of Plaintiff's Complaint as if fully set forth herein.**

49.    Plaintiff engaged in protected activity by opposing Defendants' conduct by advocating for the contractual rights African Americans at CBS Detroit to enjoy the full and equal benefit of all laws and proceedings.

**ANSWER: Denied for the reason that it is untrue.**

50.    Plaintiff's protected activity was known to Defendants.

**ANSWER: Denied for the reason that it is untrue.**

51.    Defendants retaliated against Plaintiff for engaging in protected activity by changing the terms and conditions of his employment and orchestrating a sexual harassment investigation to terminate his employment.

**ANSWER: Denied for the reason that it is untrue.**

52.    Defendants used the bogus sexual harassment investigation as "cover" for retaliation in violation of § 1981. The investigation and outcome were pretext for illegal retaliation.

**ANSWER: Denied for the reason that it is untrue.**

16

53.     As a direct result of the wrongful termination, Plaintiff has suffered damages including, but not limited to, lost past and future income and benefits, and emotional distress.

**ANSWER: Denied for the reason that it is untrue.**

54.     Plaintiff seeks punitive damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

## COUNT III – RETALIATION IN VIOLATION OF THE ELCRA

55.     Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-54 of Plaintiff's Complaint as if fully set forth herein.**

56.     Plaintiff engaged in protected activity by opposing Defendants' discriminatory conduct, which he believed violated the ELCRA.

**ANSWER: Denied for the reason that it is untrue.**

57.     Plaintiff's protected activity was known to Defendants.

**ANSWER: Denied for the reason that it is untrue.**

58.     Defendants retaliated against Plaintiff for engaging in protected activity by changing the terms and conditions of his employment and orchestrating a sexual harassment investigation to terminate his employment.

17

4909-2005-1471

**ANSWER: Denied for the reason that it is untrue.**

59.     Defendants used the bogus sexual harassment investigation as "cover" for retaliation in violation of the ELCRA. The investigation and outcome were pretext for illegal retaliation.

**ANSWER: Denied for the reason that it is untrue.**

60.     As a direct result of the wrongful termination, Plaintiff has suffered damages including, but not limited to, lost past and future income and benefits, and emotional distress.

**ANSWER: Denied for the reason that it is untrue.**

61.     Plaintiff seeks compensatory damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

## COUNT IV – RACE DISCRIMINATION IN VIOLATION OF TITLE VII

62.     Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-61 of Plaintiff's Complaint as if fully set forth herein.**

63.     Plaintiff was treated less favorably than similarly situated individuals outside his protected class and was subjected to different terms and conditions of employment based on his race.

18

**ANSWER: Denied for the reason that it is untrue.**

64.    Plaintiff was terminated. As a direct result of the wrongful termination, Plaintiff has suffered damages including, but not limited to, lost past and future income and benefits, and emotional distress.

**ANSWER: Denied for the reason that it is untrue.**

65.    Plaintiff seeks punitive damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

**<u>COUNT V – RACE DISCRIMINATION IN VIOLATION OF § 1981</u>**

66.    Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-65 of Plaintiff's Complaint as if fully set forth herein.**

67.    Plaintiff was treated less favorably than similarly situated individuals outside his protected class and was subjected to different terms and conditions of employment based on his race.

**ANSWER: Denied for the reason that it is untrue.**

68.    Plaintiff was terminated. As a direct result of the wrongful termination, Plaintiff has suffered damages including, but not limited to, lost past and future income and benefits, and emotional distress.

**ANSWER: Denied for the reason that it is untrue.**

69.    Plaintiff seeks punitive damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

70.    Plaintiff seeks punitive damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

## COUNT VI – RACE DISCRIMINATION IN VIOLATION OF THE ELCRA

71.    Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-70 of Plaintiff's Complaint as if fully set forth herein.**

72.    Plaintiff was treated less favorably than similarly situated individuals outside his protected class and was subjected to different terms and conditions of employment based on his race.

**ANSWER: Denied for the reason that it is untrue.**

73.    Plaintiff was terminated. As a direct result of the wrongful termination, Plaintiff has suffered damages including, but not limited to, lost past and future income and benefits, and emotional distress.

**ANSWER: Defendants admit that Plaintiff was terminated.  In further response to Paragraph 73, Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

74.    Plaintiff seeks compensatory damages as well as attorneys' fees and costs to the maximum extent provided under law.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further denies that Plaintiff is entitled to any damages.**

## COUNT VII – BREACH OF CONTRACT AGAINST DEFENDANTS

75.    Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein.

**ANSWER: Defendants reallege and incorporate by reference their answers to Paragraphs 1-74 of Plaintiff's Complaint as if fully set forth herein.**

76.    The Contract provided that Defendants could only terminate Plaintiff's employment for cause.

**ANSWER:  Denied in the manner and form stated.**

77.    Plaintiff did not engage in any underlying conduct that would be "cause" under the Contract.

21

**ANSWER:  Denied for the reason that it is untrue.**

78.    As such, Defendants breached the Contract by terminating Plaintiff's employment.

**ANSWER:  Denied for the reason that it is untrue.**

79.    Plaintiff suffered damages as a result of Defendants' breach.

**ANSWER:  Denied for the reason that it is untrue.**

## COUNT VIII – PROMISSORY ESTOPPEL CLAIM

80.    Plaintiff re-alleges Paragraphs 7 to 40(*sic*) as if set forth fully herein, and further states, in the alternative, the following:

**ANSWER:  Defendants reallege and incorporate by reference their answers to Paragraphs 1-79 of Plaintiff's Complaint as if fully set forth herein.**

81.    Defendants made one or more clear and definite promises to Plaintiff that he would not be retaliated against if he formally memorialized and/or discussed his complaints of race-based differential treatment with Defendants.

**ANSWER:  Denied in the manner and form stated.  In further response to Paragraph 81, Defendants thoroughly investigated any and all concerns expressed by Plaintiff regarding alleged discrimination in the workplace.**

82.    Defendants knew or should have reasonably expected that this/these promise(s) would induce Plaintiff to formally memorialize and/or discuss his complaints of race-based differential treatment with Defendants.

**ANSWER:  Denied for the reason that it is untrue.**

4909-2005-1471

83.     Plaintiff memorialized and/or discussed his complaints of race-based differential treatment because he relied on Defendants' promise(s) that he would not be retaliated against.

**ANSWER:  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 83 of the Complaint and leaves Plaintiff to his proofs.**

84.     Plaintiff suffered damages as a result of his reliance.

**ANSWER:  Denied for the reason that it is untrue.**

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court enter judgment in his favor and against Defendants, containing the following relief:

A.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic damages, including, but not limited to, an award of back pay and loss of benefits through the date of trial and front pay and future loss of benefits if the equitable remedies of employment, reinstatement and promotion are not feasible;

B.      An award of damages against Defendants, or any jointly or severally liable entity or person, in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all compensatory damages, including, but not limited to, an award of emotional distress caused by Defendants' unlawful conduct;

4909-2005-1471

C.      An award of punitive damages in an amount to be determined at trial;

D.      Prejudgment interest on all amounts due;

E.      An award of Plaintiff's reasonable attorneys' fees and costs; and,

F.      Such other and further relief as the Court may deem just and proper.

**ANSWER: Defendants deny that they have any liability to Plaintiff on any of his claims for the reason that they are untrue and further deny that Plaintiff is entitled to any damages.**

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues of fact and damages stated herein.

## AFFIRMATIVE AND OTHER DEFENSES

Without admitting any of the allegations in the Complaint and without admitting or acknowledging that it bears any burden of proof as to any of them, Defendants assert the following affirmative and/or special defenses to Plaintiff's Complaint. Defendants intend to rely upon any additional defenses that become available or apparent during pretrial proceedings and discovery in this action.

1.  Plaintiff's Complaint fails to state a claim upon which relief may be granted.

2.  Plaintiff has failed to mitigate his damages.

3.  Plaintiff lacks standing, in whole or in part.

4.  Plaintiff has failed to join all claims against Defendant.

4909-2005-1471

5.  Plaintiff's alleged damages are the proximate cause of his own actions and not of Defendants.

6.  Plaintiff's claims are preempted, in whole or in part, by the exclusive remedy provision found in the Michigan Workers' Disability Compensation Act.

7.  Plaintiff's Complaint is barred by the applicable statute of limitations.

8.  Plaintiff's cause of action is not warranted by existing law or good faith argument for the extension, modification or reversal of existing law.

9.  Plaintiff's treatment by Defendants was for legitimate, non-discriminatory business reasons.

10. There exists no proximate cause between any alleged acts by Defendants and Plaintiff's alleged damages. Moreover, the alleged acts by Defendants are the result of conduct of persons other than Defendants.

11. Plaintiff has failed to exhaust his administrative remedies.

12. Plaintiff's Complaint is barred, in whole or in part, because of release, payment, prior judgment and statute of limitations.

13. At all times concerned with this litigation, Defendants acted in a manner in which was proper, reasonable, lawful and in exercise of good faith.

14. There is no evidence of pretext to counter Defendants' legitimate business reasons for its actions.

15. Plaintiff's claims and damages are barred, in whole or in part, based upon "after-acquired" evidence discovered by Defendants after Plaintiff's termination of employment.

## <u>RESERVATION OF RIGHT</u>

Defendants reserve the right to file, upon completion of their investigation and discovery, such amended answers and defense as may be appropriate.

WHEREFORE, Defendants ask that Plaintiff's Complaint be dismissed in its

4909-2005-1471

entirety and that a judgment of no cause for action be entered in favor of Defendants together with costs and attorney fees.

/s/ Gary C. Ankers
_____
Gary C. Ankers (P41599)
gankers@littler.com
LITTLER MENDELSON, P.C.
500 Woodward Ave., Suite 2600
Detroit, Michigan 48226
Telephone:  313.446.6400
Facsimile:   313.446.6405
Attorneys for Defendants DETROIT
TELEVISION STATION WKBD INC.,
CBS BROADCASTING INC. &
Dated:  February 10, 2025          PARAMOUNT GLOBAL


## **CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on February 10, 2025, via:

| _____ U. S. Mail | _____ Facsimile |
|---|---|
| ___X___ ECF Filing | _____ Hand Delivery |
| _____ E-Mail | _____ Federal Express |

/s/ Gary C. Ankers
_____
Gary C. Ankers

4909-2005-1471